Complainant seeks specific performance of an agreement for the sale of the premises 607 Hudson Street, Hoboken, New Jersey, allegedly made by the defendant with Sidney and Roslyn Wohle on February 14th, 1946. The consideration mentioned in the agreement is $9,000, of which $500 was paid as a deposit on execution of the contract. A mortgage of $3,300 was to be assumed, and the balance of $5,200 was to be paid in cash on delivery of deed.
The contract among other things contains a provision binding heirs, executors, administrators, successors and assigns *Page 482 
of the respective parties. The date mentioned in the contract for the closing of title is May 1st, 1946.
The defendant on May 20th, 1946, caused a notice to be served upon the vendee, in care of complainant (Exhibit C-3), making time of the essence and fixing May 23d 1946, at 10 A.M., as the time, and the office of William Schlosser, attorney, as the place, for closing title.
The complainant alleges that the agreement was assigned to him on February 23d 1946. The defendant contends that no assignment of the agreement has ever been submitted to it by the complainant or to anyone in its behalf.
While the complainant admits that no written assignment was served upon the defendant, or its counsel (testimony, page 58), Rosenbaum, testifying in behalf of the complainant, stated that the defendant received oral notice of the assignment nine or ten days after it was made. However, under cross-examination (testimony pages 40, 41, 42), his memory appeared somewhat hazy about it and he admitted that he did not remember whether the defendant was so informed.
The complainant's testimony indicates that he did not give or serve the defendant with any written copy of the assignment. He said (testimony, page 63): "Mr. Milberg, truthfully, I didn't know it was necessary." However, he stated that he gave oral notice of the assignment to the defendant about nine or ten days after he received it. On April 2d 1946, the complainant wrote the defendant as follows:
"April 2, 1946. The Hudson St. Holding Co. Inc., 607 Hudson St., Hoboken, N.J. Gentlemen:
We are prepared to close title on property known as 607 Hudson St. Hoboken, New Jersey for which you have contracted to sell for the sum of $9,000.
Will you kindly instruct your attorneys to inform me when I may have my clients ready for the purpose of closing this deal and receiving a Deed from you for same. If you decide to wait for the first day of May for this closing, please inform me of your decision.
Very truly yours, JAC:LC (Signed) JOSEPH A. CARLUCCIO." (Exhibit D-1.) *Page 483 
It is apparent from the letter (Exhibit D-1) that the complainant was acting in a representative capacity, and not as the assignee of the purchaser, as is contended he became on February 23d 1946. The letter makes no reference to an assignment of the contract to purchase.
William Schlosser, a member of the bar of this state, represented the defendant on the day set to convey the title. He testified (testimony, page 86):
"Q. At the time on which title was to close at your office on May 23d, at which Mr. Carluccio and Mr. Rosenbaum were present, did they produce this contract C-1 with the assignment thereon? A. No, sir.
"Q. Was it ever shown to you before? A. No, sir.
"Q. Is this the first time that you have ever seen the assignment as referred to in C-1 from the Wohles to Carluccio? A. Yes, sir."
On cross-examination he testified (testimony, page 89):
"Q. And did he demand of you a deed for these premises? A. He did.
"Q. And did he tell you that he had the assignment? A. He said he was the assignee.
"Q. And did he tell you he had the contract of assignment with him? A. With him?
"Q. Yes. A. No, sir.
"Q. Did his attorney, Mr. Glick, then tell you he had a copy of the assignment with him? A. No, sir.
"Q. Are you certain as to that? A. Positive.
"Q. Did you make any request for the assignment? A. I asked for proof of his position there entitling him to request a deed in his name as assignee, and no proof was furnished."
There is no evidence that an assignment of the contract to purchase was presented by the complainant or by anyone for him to the defendant or its counsel. Mr. Schlosser informed the complainant and his counsel, Mr. Glick, when they appeared at the time set for the closing of title on May 23d 1946, that he could not recognize complainant's right to a deed from defendant without some tangible or written evidence of his interest in the contract. None was offered. N.J.S.A. 25:1-2 provides: *Page 484 
"No lease, estate or interest, either of freehold or term of years, or any uncertain interest of, in, to or out of any real estate, shall be assigned, granted or surrendered, unless it be by deed or note in writing, signed by the party so assigning, granting or surrendering the same, or his agent thereunto lawfully authorized by writing, or by act and operation of law."
An oral notice to the vendor of the assignment of a contract to purchase land is not a compliance with the provisions of the statute, and it is not binding upon the vendor; but the submission of a written assignment is effective.
By letter of May 21st, 1946, the complainant's attorney notified the defendant's attorney of the assignment (ExhibitC-6). Such communication and want of competent evidence of the assignment, is not binding upon the defendant.
The complainant contends that he in conjunction with his attorney on May 23d 1946, did exhibit the contract with the assignment (Exhibit C-1), and demanded a deed of conveyance. That statement is denied by Mr. Schlosser, the attorney for the defendant. He stated that he never saw or received any written assignment of the contract; that none was exhibited to him, although he asked the complainant and his attorney for it while they attended at the time and place for the closing of title, and that they did not offer or produce any assignment. The truth of the situation appears to reside with the defendant, and I am inclined to believe the testimony submitted on its behalf.
The defendant raises the point that the contract, among other things, contains a provision that the vendees (the Wohles) will pay the purchase price partly in cash and partly "by assuming the mortgage at present a lien on the premises and paying the same according to the terms thereof," and it takes the position that the mortgage obligation is not assignable — that the obligation of the vendees continues after assignment since they themselves have agreed to assume and pay the mortgage. Certainly, they cannot replace their credit with that of another unless authorized to do so by the vendor.
A vendee is without power to divest or release himself of such an obligation by merely transferring the right to take title. Pursuing such a course is, in effect, an arbitrary substitution *Page 485 
of credit which will not bind the vendor. In Kutschinski v.Thompson, 101 N.J. Eq. 649; 138 Atl. Rep. 569, the court said:
"The personal liability of the vendee, Samuel E. Houston, to the vendors, is not affected by the assignment of the contract to the complainant Mary L. Kutschinski. 27 R.C.L. 563, 302;Weidenbaum v. Raphael, 83 N.J. Eq. 17. In the latter case Vice-Chancellor Emery says: `The vendee's right to specific performance is dependent on the fulfillment of the conditions to be performed on his part, and the assignee of the vendee * * * is not permitted to substitute his personal liability on the unperformed conditions against the consent of the vendor.'"
And again,
"The defendants were not obliged, in my opinion, to accept the bond (and mortgage) of May L. Kutschinski, as assignee of the vendee Samuel E. Houston, to secure the sum of $5,200 representing part of the purchase moneys, nor to accept her assumption of the $5,800 mortgage now a lien on the lands and premises described in the contract entered into between said defendants as vendors, and said Samuel E. Houston as vendee."
Vice-Chancellor Fallon cites Muller v. Raskind, 100 N.J. Eq. 258; 135 Atl. Rep. 682, and Seacoast Development Co. v.Beringer, 100 N.J. Eq. 295; 134 Atl. Rep. 770.
The defendant claims that the alleged contract of sale was obtained by the fraud and conspiracy of complainant and the added defendant, Saul Rosenbaum, who acted as a broker. Rosenbaum and complainant maintain offices together. They allegedly had the purchaser, Sidney Wohle, who is married to Rosenbaum's niece, act as a dummy for them in the transaction.
Rosenbaum engineered the transaction leading to the execution of the alleged contract. The contract says that the Wohles lived in Brooklyn, New York; that assertion is challenged and denied by the defendant. It charges that no address was given in Brooklyn because Rosenbaum aimed to conceal the whereabouts of the vendees. The testimony shows that Wohle never saw or inspected the property; that he *Page 486 
never spoke to the owners of it; that he did not know its income and that he never purchased property before he entered into the alleged contract. The Wohles lived in a furnished room near the premises in question, and within easy access to it. Wohle's testimony is not convincing. He among other things said that he was very anxious to purchase a home, and despite that declaration he sacrificed the opportunity to obtain one by accepting from his wife's uncle, Rosenbaum, $600 for his $500 deposit on the contract.
Rosenbaum, the agent and broker of the defendant, contradicted himself in several instances. His testimony was neither clear, credible nor convincing, and leads to the inescapable conclusion that he violated his duty to his principal and used his nephew as a dummy in order to acquire defendant's title.
William Schlosser requested the complainant about May 19th or 20th to furnish him with the address of the Wohles, but he stated he did not know it (testimony, page 64). Yet, notwithstanding, he told Schlosser (testimony, page 87) that all papers for the Wohles should be sent to them in care of his office.
The law is well established that an agent is bound to disclose to his principal all the facts material to the transaction in reference to which he has been employed. Rosenbaum failed to observe this requirement. See Young v. Hughes, 32 N.J. Eq. 372,
wherein Mr. Justice Magie, referring to the duties of an agent, said:
"Among other things, he is bound to disclose to his principal all facts within his knowledge which are or may be material to the matter in which he is employed. The principal has bargained for the agent's skill and experience and is entitled to expect his active aid in the conduct of the negotiations."
The court in the Young Case, supra, also disposed of the question of whether actual damage was a necessary incident to the agent's failure to disclose by saying:
"The effect of concealment and neglect of duty, such as this, upon the transaction, so far as Warren is concerned, does not at all depend on the question whether or not the *Page 487 
result was injurious to the principal. The contract is affected by the misconduct of the agent from considerations of public policy rather than of injury to the principal. * * * It matters not that there was no fraud meditated, and no injury done. The rule is not intended to be remedial of actual wrong, but preventive of the possibility of it."
See, also, Marsh v. Buchan, 46 N.J. Eq. 595;22 Atl. Rep. 128; Resky v. Meyer, 98 N.J. Law 168; 119 Atl. Rep. 97; DiamondRubber Co., Inc., v. Feldstein, 112 N.J. Law 514;171 Atl. Rep. 815.
Our courts maintain that a fiduciary's entire loyalty is to his principal; that he has no legal or equitable right to make a secret deal or withhold any facts from his principal whether or not such agent has thereby obtained an advantage. Rosenbaum evidently was unmindful of his duty to his principal in the instant transaction. Goldstein v. Marsella, 136 N.J. Eq. 521;42 Atl. Rep. 2d 772.
Specific performance of a contract will not be enforced where any fraud has been practiced. King v. Morford, 1 N.J. Eq. 274;Miller v. Chetwood, 2 N.J. Eq. 199. In Plummer v. Keppler,26 N.J. Eq. 481, Vice-Chancellor Van Fleet said:
"The remedy by specific performance is discretionary; the question is not, what must the court do, but what, in view of all the circumstances of the case in judgment, should it do to further justice."
Considering the point raised by the complainant that the three days' notice to make time of the essence was unreasonable, I am inclined to the belief that he is estopped from objecting to the notice. He appeared at the date fixed, offered no objection as to the time and then declared that he was ready to close the deal. In my opinion his objection was waived, and he should be estopped from asserting it.
I shall advise a decree dismissing the bill. *Page 488